# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WISCONSIN

---

L.G., a minor, by his mother
 and natural guardian,
 RHODA HOPGOOD,

 Plaintiff,

 v.   Case No. 07-C-0671

MICHAEL J. ASTRUE,
 Commissioner of the
 Social Security Administration,

 Defendant.

---

# DECISION AND ORDER

---

## NATURE OF CASE

The plaintiff, L.G., a minor, by Rhoda Hopgood, mother and natural guardian, commenced this action on July 23, 2007, seeking judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying the plaintiff's application for supplemental security income benefits. The parties have consented to United States magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L.R. 73.1 (E.D. Wis.). The plaintiff's appeal will be addressed herein.

## **PROCEDURAL HISTORY**

On July 7, 2004, the plaintiff filed an application for supplemental security income with a protective filing date of June 30, 2004. The plaintiff alleges that he became disabled on February 11, 2004, due to oppositional defiant disorder. (Tr. 58). The plaintiff's application was denied initially and upon reconsideration. Pursuant to the plaintiff's request, a hearing was held before an administrative law judge (ALJ) on August 15, 2006. The plaintiff, who was represented by counsel, and his mother appeared and testified at the hearing.

In a November 20, 2006, decision, the ALJ found that the plaintiff was 16 years old and in the 9th grade at the time of the decision and had never engaged in substantial gainful activity. The ALJ found that the plaintiff suffers from attention deficit hyperactivity disorder, but does not have an impairment or combination of impairments that meet or medically or functionally equals the severity of any impairment in the Listing of Impairments. The ALJ further found that the plaintiff has less than marked limitations in the domains of acquiring and using information, attending and completing tasks and interacting and relating with others, but that he had no limitations in the domains of moving about, manipulating objects, caring for himself, and health and physical well-being.

According to the ALJ, the testimony of the plaintiff's mother was generally credible, but her testimony tended to show the plaintiff was not disabled. The ALJ also found that when the plaintiff's complaints and allegations about his limitations and impairments are considered in light of all of the objective medical evidence and the record as a whole, they do not reflect a child who has an impairment or combination of impairments that meet or medically or functionally equal the requirements for any impairment or combination of impairments in the Listing of Impairments.

The ALJ concluded that the plaintiff is not under a "disability" as defined in the Social Security Act and is not eligible for child's supplemental security income benefits under the Act. (Tr. 21). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied the plaintiff's request for review.

The history of this case is well summarized in the record. Consequently, the court will only engage in a limited discussion of the facts relevant to this decision.

## **APPLICABLE LAW**

In order to be "disabled" and qualify for supplemental security income, a child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration has adopted a three-step sequential analysis to determine whether a child is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is to determine whether the child is engaged in any substantial gainful activity and, if so, the child is not disabled. Id. at § 416.924(b). The second step is to determine whether the child has a medically severe impairment or combination of impairments. Id. at § 416.924(c). The third step is to determine whether the child's impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings), which the Commissioner acknowledges to be conclusively disabling. Id. at § 416.924(d). If the Commissioner does not determine that the child meets or equals one of the impairments in the Listings, the Commissioner must determine if the limitations caused by the child's impairments are functionally equivalent to one of the listed impairments. 20 C.F.R. § 416.926a; Brindisi v. Barnhart, 315 F.3d 783, 785 (7th Cir. 2003).

A child's ability to function is assessed in terms of six domains, broad areas of functioning intended to capture what the child can or cannot do. The domains are:

(i)   Acquiring and using information;
(ii)  Attending and completing tasks;
(iii) Interacting and relating with others;
(iv)  Moving about and manipulating objects:
(v)   Caring for yourself; and
(vi)  Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). For a child's impairment to "functionally equal the listings," it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.92a(a); Brindisi, 315 F.3d at 785.

A child will be found to have a "marked" limitation in a domain when his impairments interfere seriously with his ability to independently initiate, sustain, or complete activities. "Marked" limitation also means a limitation that is "more than moderate," but "less than extreme." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation in a domain exists when a child's impairments interfere very seriously with his ability to independently initiate, sustain or complete activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating given to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(3).

Review of the Commissioner's decision is limited. Sheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The Social Security Act specifically provides that the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. Jones v. Shalala, 10 F.3d 522, 523 (7th Cir. 1993); see 42 U.S.C. § 405(g). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to

-4-

support a conclusion." Blakes v. Barnhart, 331 F.3d 565, 568 (7th Cir. 2003); see also, Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

In reviewing the decision of the Commissioner, this court is obligated to review all the evidence contained in the record and such review "must be more than an uncritical rubber stamp." Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. Powers v. Apfel, 207 F.3d 431, 434 (7th Cir. 2000). However, even if substantial evidence supports the Commissioner's findings, this court may reverse if the ALJ committed an error of law. White v. Apfel, 167 F.3d 369, 373 (7th Cir. 1999).

## **ANALYSIS**

In this case, the ALJ evaluated whether the plaintiff was disabled in accordance with the three-step sequential evaluation process set forth in the regulations. On appeal, the plaintiff asserts that the ALJ erred in assessing functional equivalence. The plaintiff acknowledges that the ALJ discussed the relevant domains of functioning, but states that the ALJ did not sufficiently articulate the bases for his findings in a manner to permit an informed review. In particular, the plaintiff contends that the ALJ erred in finding that the plaintiff did not exhibit marked or extreme limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. The Commissioner correctly notes that the plaintiff bears the burden of proving that the plaintiff functionally meets or equals a listed impairment. The Commissioner maintains that the ALJ reasonably considered the evidence and expressed his reasoning in a manner that allows meaningful judicial review.

**1. Whether the ALJ's Determination Regarding the Plaintiff's Ability to Acquire and Use Information is Supported by Substantial Evidence.**

Acquiring and using information refers to how well a child acquires or learns information, and how well he uses the information he has learned. 20 C.F.R. § 416.926a(g). The Code of Federal Regulations states as follows:

*Adolescents (age 12 to attainment of age 18).* In the middle and high school, you should continue to demonstrate what you have learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments). You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library and using public transportation). You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations . . ..

20 C.F.R. § 416.926a(g)(2)(v).

*Examples of limited functioning in acquiring and using information*. . . . The following examples describe some limitations . . . [and] do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage . . .
(i) You do not demonstrate understanding of words about space, size, or time; . . .
(ii) You cannot rhyme words or the sounds in words.
(iii) You have difficulty recalling important things you learned in school yesterday.
(iv) You have difficulty solving mathematics equations or computing arithmetic answers;
(v) You talk only in short, simple sentences and have difficulty explaining what you mean.

20 C.F.R. § 416.926a(g)(3).

The ALJ determined that L.G. has "less than marked" limitations of functioning in the domain of acquiring and using information. (Tr. 19). The plaintiff contends that the ALJ erred by failing to address the requirements of this domain and failed to adequately explain how the evidence supported his findings. The Commissioner submits that the ALJ reasonably concluded that L.G. exhibited "less than marked" limitations in the domain of acquiring and using information based on substantial evidence.

-6-

The plaintiff was born on November 26, 1990. He was 13 years old on the date of his initial filing and 16 years old on the date of the ALJ's decision. (Tr. 17, 401). In September, 1997, the plaintiff was diagnosed with attention deficit hyperactivity disorder by Dr. J. Moldvan and placed on Ritalin.

During June, 2004, Dr. Jae Yong Shim began treating the plaintiff and managing his medications to improve the plaintiff's school performance. The plaintiff was prescribed Ritalin and Risperdal. The ALJ stated that Dr. Shim did not report any unusual movements or observe displays of impulsivity, antisocial behavior or hostility behaviors and there were no reports of suicidal/homicidal ideation. (Tr. 17-18, citing Exhs. 1F and 14F). On November 30, 2004, the plaintiff began treatment with Dr. Valynda Wells, a psychologist, for his hyperactivity. Dr. Wells diagnosed attention deficit hyperactivity disorder and recommended that the plaintiff continue on his medications as prescribed by Dr. Shim. (Tr. 18). The plaintiff was also treated by Dr. Bruce Semon, a psychiatrist. In June 2006, Dr. Semon noted that the plaintiff had been fighting more frequently and opined that his Adderall dosage may have been too high and he reduced the dosage. (Tr. 18, citing Exhs. 1F, 9F and 14F).

On December 14, 2004, the plaintiff was referred to Jeffrey L. Polczinski, Psy.D., who evaluated the plaintiff and submitted a disability report. (Tr. 127-133). The plaintiff "displayed no unusual speech or language deficits, no unusual movement and mannerisms or abnormal behavior problems." (Tr. 18). During psychological testing, the plaintiff achieved scores that fell into the borderline range except for a processing speed score which fell into the very low range. Dr. Polczinski states that based on the results "the plaintiff's overall level of intellectual functioning fell into the mildly retarded range" but that this appeared to a very low estimate of the plaintiff's intellectual potential. (Tr. 132-33). Dr. Polczinski noted that reports from

-7-

Milwaukee Public Schools indicated that the plaintiff had a low average intellectual ability. Dr. Polczinski opined that the plaintiff's overall functioning may have been affected by the side effects of medication. Dr. Polczinski also noted that the plaintiff was able to provide correct answers to more difficult questions, but missed several easier ones. Dr. Polczinski opined that the plaintiff's school performance would improve if he were more compliant with medication.

The ALJ's assessment of L.G.'s level of functioning in this domain is consistent with the opinion of the mental health professional who reviewed the record and expressed an opinion as to L.G.'s ability to acquire and use information. On September 20, 2004, Michael J. Mandli, Ph.D., submitted a childhood disability evaluation form and opined that L.G. has "less than marked" limitations in acquiring and using information. (Tr. 108). The ALJ noted that "[t]he disability medical consultants . . . were of the opinion, that despite the attention deficit hyperactivity disorder, the claimant did not have a marked limitation or extreme limitation in any domain." (Tr. 20, citing Exhs. 2F and 4F).

In February, 2004, when he was 13 years old and in the 6th grade, the plaintiff underwent an Individualized Education Program (IEP) at his school. (Tr. 135-37). The plaintiff's performance on intelligent testing was generally in the low average range, but his oral language skills and level of academic knowledge were average. (Tr. 136, 139, 143). A report discussed that the plaintiff's problems related to distractibility, off-task behavior and lack of work completion suggesting a need for increased levels of support within the classroom. (Tr. 143). A teacher questionnaire submitted September 2, 2004, opined that the plaintiff had slight problems with acquiring and using information. (Tr. 70). One month later, the same teacher opined that the plaintiff had no problems in the domain of acquiring and using information. (Tr. 185).

-8-

During a February 2006, IEP conference, the plaintiff's teachers described him as a capable student when he remained focused and on task, although he required additional explanation and examples to grasp new concepts. (Tr. 211, 216). In June 2006, a teacher questionnaire indicated that the plaintiff exhibited problems in acquiring and using information. The teacher reported that the plaintiff had "no problem" understanding and participating in class discussions and that he had a "slight problem" in understanding school and content vocabulary, providing organized oral explanations and adequate descriptions, and applying problem-solving skills in class discussions. (Tr. 227). The teacher reported that the plaintiff had obvious problems in comprehending oral instructions, expressing ideas in written form, learning new material and recalling and applying previously learned material, He also had a serious problem in reading and comprehending written material and comprehending and doing math problems. (Tr. 227). The plaintiff grades in June, 2006 were one A, one B, three Cs and three Ds. (Tr. 234). The plaintiff's report card in June, 2006, noted that the plaintiff is capable of doing the work, but his behavior, such as tardiness and walking out of class, was problematic. (Tr. 236).

The plaintiff and his mother testified as to the plaintiff's difficulties. The plaintiff testified that he had difficulty with math and social studies, but did well in reading and English. (Tr. 405-06). The plaintiff further acknowledged that he did not complete all of his homework assignments because some of them were too hard and that he often did not bring homework home with him. (Tr. 406, 417, 419, 436). The plaintiff has been suspended and received detentions for fighting in school, being disrespectful to teachers and for leaving his classroom and wandering the school corridors without permission. (Tr. 110-13, 195-204, 405, 408, 416, 429-30, 434). The plaintiff also associates with a small group of other children who get in trouble. (Tr. 433-34).

-9-

Case 2:07-cv-00671-PJG   Filed 04/14/08   Page 9 of 16   Document 16

The ALJ based his determination on the plaintiff's ability to acquire and use information on the statements from the plaintiff's teachers and the conclusions of Dr. Shim, Dr. Wells, Dr. Semon and Dr. Polczinski. (Tr. 19). The ALJ noted that the plaintiff continues to receive special education services in reading, math and written language and his level of academic knowledge is in the average to low average range. The plaintiff's school records established that "after a temporary drop in performance, [the plaintiff's] grades reflected IEP progress and improved to A, B, Cs and Ds subsequent to the date he filed his application for supplemental security income." (Tr. 19). On February 1, 2006, the plaintiff participated in an IEP. The ALJ noted that no actual testing or evaluation results were provided. However, the reviewing staff noted that the plaintiff had some difficulties with beginning and completing assignments, but was a capable student when he could remain focused and on task.

The plaintiff argues that the plaintiff is "markedly" limited in this domain, but fails to identify evidence that demonstrates L.G. has "marked" limitations in acquiring and using information. The plaintiff notes that in the 2006 IEP report, the ALJ failed to mention that the plaintiff was working at a beginning 4th grade level in reading, a beginning 5th grade level in written language, and a mid-4th grade level in math. (Tr. 211). The ALJ, however, addressed this report in his decision and noted that the plaintiff's grades reflected IEP progress. The IEP also noted that the plaintiff "is a capable student when he is focused and on task." (Tr. 211). The plaintiff also points to a teacher questionnaire dated November 24, 2004, which opined that the plaintiff had "obvious" problems in acquiring and using information. (Tr. 87). A different teacher, however, one month earlier, had opined that the plaintiff had no problems in acquiring and using information. (Tr. 184). The plaintiff fails to point to evidence that the ALJ failed to

-10-

consider that demonstrates that the plaintiff has "marked" or "extreme" limitations in the domain of acquiring and using information.

In this case, the ALJ supplied adequate reasons and cited substantial evidence for reaching the determination he did. This court has the authority to review the decision of the ALJ to determine if it is reasonably supported by the record; it may not weigh the evidence anew. See Powers, 207 F.3d at 434. In conclusion, in light of the evidence in the record as a whole, the ALJ was reasonable in concluding that the plaintiff's limitations in the domain of acquiring and using information were "less than marked" rather than "marked" or "extreme."

**2.    Whether the ALJ's Determination Regarding the Plaintiff's Ability to Attend and Complete Tasks is Supported by Substantial Evidence.**

Attending and completing tasks refers to a child's ability to focus and maintain his attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them. 20 C.F.R. § 416.926a(h). The Code of Federal Regulations states as follows:

*Adolescents (age 12 to attainment of age 18).* In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long range academic projects. You should be able to organize your materials and to plan your time in order to complete school tasks and assignments.

20 C.F.R. § 416.926a(h)(2)(v).

*Examples of limited functioning in attending and completing tasks*. . . . The following examples describe some limitations. . . [and] do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage . . .
(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
(ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
(iii) You repeatedly become side-tracked from your activities or you frequently interrupt others.

-11-

(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
(v) You require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.926a(h)(3).

The ALJ determined that the plaintiff is less than markedly limited in this domain. The ALJ noted that the plaintiff was 15 years old at the time of the hearing and had been promoted to the 9th grade at Rufus King High School. The ALJ acknowledged that the plaintiff needs to work "in a collaborative environment in order to stay focused and on task." (Tr. 19). The ALJ noted that the plaintiff continues to struggle in reading, math and written language, but that the record documents that the plaintiff has frequent absences and fails to complete work assignments outside the classroom which exacerbate the plaintiff's academic deficiencies.

The plaintiff's teachers described a lack or interest and a failure to participate in school work and complete assignments. The ALJ acknowledged, however, that the plaintiff's grades in school "indicate that he was able to complete a sufficient number of required tasks to receive an A, B and Cs during the 2005-06 school year session." (Tr. 19). The ALJ stated that while the plaintiff suffers from attention deficit hyperactivity disorder, his limitations related to attending to and completing tasks were hindered by "his absences from school, failure to complete homework, volitional choices . . . as well as lack of parental supervision and involvement." (Tr. 19). In making these determinations, the ALJ relied on Exhibits 4E-6E, 1F, 3F, and 5F-15F.[1] Dr. Mandli reviewed the record and concluded that the plaintiff exhibited less than marked limitation in the domain of attending and completing tasks. (Tr. 108).

---

[1] These exhibits included teacher reports and questionnaires, a Social Security Administration Function Report – Child, the plaintiff's IEP records and behavioral intervention plan, school progress reports and records, medical records, and Dr. Polczinski's consultative examination of December 17, 2004.

-12-

The plaintiff contends that the ALJ's conclusion is not supported by substantial evidence and identifies evidence of the plaintiff's difficulties in attending and completing tasks. A teacher questionnaire submitted in November, 2004, opined that the plaintiff had "obvious" problems in attending and completing tasks. The teacher stated that the plaintiff "is quite capable but is falling behind due to attention issues." (Tr. 88). Another teacher opined that the plaintiff had "slight" problems attending and completing tasks. (Tr. 186).

The plaintiff further asserts that the ALJ failed to mention important medical evidence and incorrectly summarized the records of Dr. Shim. The ALJ stated that Dr. Shim did not report "any unusual movements or observed displays of impulsivity, antisocial behaviors or hostility behaviors and there were no reports of suicidal/homicidal ideation." (Tr. 18). The ALJ's characterization of Dr. Shim's record is accurate, but not complete. Dr. Shim noted that the plaintiff was "cooperative" and average in intellectual functioning. However, Dr. Shim also noted that the plaintiff was hyperactive, impulsive, inattentive, restless, fidgety, would tantrum and was underachieving. (Tr. 101).

There is no doubt that the plaintiff has difficulty attending and completing tasks. However, the plaintiff does not explain why the evidence relied upon by the ALJ required the ALJ to conclude that the plaintiff exhibited marked to extreme limitations concerning his ability to attend and complete tasks. The plaintiff fails to identify evidence that demonstrates that the plaintiff exhibited "marked" or "extreme" limitations in the domain of attending and completing tasks. Dr. Shim did not offer such an opinion nor did Dr. Wells. The ALJ noted that during the 2005-06 school session the plaintiff's grades reflected a student who was capable of completing a sufficient number of tasks. Therefore, the ALJ reasonably concluded that the plaintiff exhibited "less than marked" limitations in the domain of attending and completing tasks.

**3. Whether the ALJ's Determination Regarding the Plaintiff's Ability to Interact and Relate to Others is Supported by Substantial Evidence.**

Interacting and relating to others refers to how well a child initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i). The ALJ concluded that the plaintiff did not have "marked" or "extreme" limitations with regard to this domain. In particular, the ALJ noted that the plaintiff is not withdrawn and socializes with friends in the neighborhood. The plaintiff testified that he plays basketball at the YMCA. (Tr. 410). The plaintiff testified that he gets along pretty well overall with his family, although he argues with his sister over the use of the telephone. The ALJ noted that the plaintiff's mother testified that the plaintiff can become "quickly grumpy, moody and rebellious with his own 'attitude' factors when asked to contribute with tasks around the house or attend church." (Tr. 19).

The ALJ noted that the plaintiff's behavior seemed to have escalated in April 2006, when he was suspended from school, but has improved in the past with medications. Dr. Semon reported that the plaintiff was better when he took his medication. The ALJ again relied on the plaintiff's IEP which documents that the plaintiff leaves the classroom and wanders the halls, but that the plaintiff can be a good worker and understands the concepts being taught when he is focused. Dr. Mandli also concluded that the plaintiff exhibited less than marked limitations with regard to the domain of interacting and relating to others. (Tr. 108).

The plaintiff contends that the ALJ failed to discuss in detail evidence that demonstrates the plaintiff's difficulty interacting and relating to others. The plaintiff notes school records which document eight suspensions for a total of eighteen days during the 2005-2006 school year for

-14-

disorderly conduct, chronic classroom disruption, physical fights, making threats and not following directions, and attacking another student. (Tr. 195-204). A teacher questionnaire submitted October 29, 2004, opined that the plaintiff had a "very serous" problem respecting/obeying adults. (Tr. 187). That same teacher opined that the plaintiff has a "slight" problem playing cooperatively with other children and making and keeping friends. (Tr. 187). A teacher questionnaire submitted November 24, 2004, noted that the plaintiff had "obvious" problems in interacting and relating to others. The teacher did not opine that the plaintiff had a "serious" or "very serious" problem. (Tr. 89).

The ALJ cited the entire record, weighed conflicting opinions and made his determination. The ALJ is not required to specifically address every piece of evidence in the record. Johansen v. Barnhart, 314 F.3d 283, 287 (7th Cir. 2002) ("Though the ALJ need not address every piece of evidence, he must articulate, at some minimum level, his analysis of the record so that the reviewing court can follow his reasoning."). The ALJ's determined that the plaintiff's ability to interact socially was not completely impaired and gave reasons for this conclusion. The plaintiff fails to explain why the evidence relied upon by the ALJ required the ALJ to conclude that the plaintiff exhibited marked to extreme limitations concerning his ability to interact and relate with others. The ALJ reasonably concluded that L.G. exhibited "less than marked" limitations in the domain of interacting and relating to others. In this case, the plaintiff exhibits problematic behavior and requires special attention in school. The evidence, however, does not demonstrate that the plaintiff is markedly or extremely limited in any of the areas set forth in 20 C.F.R. § 416.926a(b).

In sum, the ALJ properly evaluated the evidence in the medical record and adequately articulated his reasons for denying the plaintiff's claim for disability benefits. The ALJ's decision

-15-

is supported by substantial evidence – "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007) (citation omitted). Accordingly, the court concludes that substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled and is not entitled to disability benefits. Therefore, the plaintiff's appeal is denied.

## **ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's appeal be and hereby is **denied**.

**IT IS FURTHER ORDERED** that this case be and hereby is **dismissed**.

**IT IS ALSO ORDERED** that the Clerk of Court be and hereby is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 14th day of April, 2008.

BY THE COURT:

   s/ Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge